## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **VOLLARA LLC**, a Delaware Limited Liability Company, **VOLLARA CONCEPTS LLC**, a Delaware Limited Liability Company, and **DBG GROUP INVESTMENTS, LLC**, a Delaware Limited Liability Company,<br><br>              Plaintiffs,<br>       v.<br><br>**ECOTECHWORLD, INC.**, a California Corp., and **ALEXANDER VYSOTSKY**,<br><br>              Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No.: _____ |

## <u>PLAINTIFFS' ORIGINAL COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF</u>

Plaintiffs Vollara LLC ("Vollara"), Vollara Concepts, LLC ("Vollara Concepts"), and DBG Group Investments, LLC ("DBG Group") (collectively, "Plaintiffs") bring this action against Defendants Ecotechworld, Inc. ("Ecotech") and Alexander Vysotsky ("Vysotsky") (collectively, "Defendants") for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); trademark infringement under Texas common law; passing off under Texas common law; and misappropriation under Texas common law.  In support of their Complaint, Plaintiffs allege as follows:

## <u>PARTIES</u>

1.      Vollara is a limited liability company, organized under the laws of the State of Delaware, with its principal place of business in Dallas, Texas.

2.      Vollara Concepts is a limited liability company, organized under the laws of the State of Delaware, with its principal place of business in Dallas, Texas.

3.     DBG Group is a limited liability company, organized under the laws of the State of Delaware, with its principal place of business in Dallas, Texas.

4.     Ecotech is a corporation, organized under the laws of the State of California, with its principal place of business located at 19525 Ventura Blvd. Unit A, Tarzana, California, 91356.

5.     Vysotsky is an individual who, on information and belief, resides at 18930 Sherman Way, Apt. 21, Reseda, California, 91335 and may be served with process there or anywhere else he may be found.

## JURISDICTION

6.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 28 U.S.C. § 1367.   Plaintiffs' federal claims are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a), and their claims arising under the laws of the State of Texas are substantially related to their federal claims such that they form part of the same case or controversy under Article III of the United States Constitution.

7.     This Court has personal jurisdiction because Defendants have expressly aimed tortious activities toward the State of Texas and established sufficient minimum contacts with Texas by, among other things, advertising and selling infringing products bearing Plaintiffs' trademarks to consumers within Texas through one or more highly interactive commercial websites.   Plaintiffs' claims arise out of Defendants' sales of infringing products to Texas residents.

## VENUE

8.     Venue is properly founded in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred

within this judicial district or, in the alternative, because a Defendant is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS
### Plaintiffs and Their Trademarks

9.      Plaintiffs market and sell a variety of eco-friendly technologies, such as air and water purification devices.  Plaintiffs sell their products exclusively through distributors who are expressly authorized to sell their products.

10.      Plaintiffs devote a significant amount of time, energy, and resources to protecting the value of its brands, products, and reputation.  By distributing their products exclusively through authorized distributors, Plaintiffs are better able to control the quality and integrity of their products and ensure that customers receive accurate information about them.

11.      Plaintiffs are the owners or licensees of numerous trademarks related to brands such as EcoQuest, Fresh Air, Vollara, activTek, Activtek Environmental, ActivePure, Fresh Air By Ecoquest, and Ecobox (the "Plaintiffs Brands").  Plaintiffs sell products under one or more of these brands.

### The Development of the EcoQuest Brand

12.      The corporation EcoQuest International, Inc. along with its parents, subsidiaries and/or affiliates (collectively "EcoQuest International") manufactured and distributed air and water purification products.  From at least 2000 to 2009, EcoQuest International, or related entities that would later become the predecessors-in-interest to Plaintiffs, manufactured and sold those products under the EcoQuest name for direct consumer sale.

13.      Beginning in at least 2007, EcoQuest International, or related entities that would later become the predecessors-in-interest to Plaintiffs, also manufactured and sold air purification products through commercial channels using the activTek mark.

3

14.     EcoQuest International marketed air filtration products under the ActivePure, Activtek, Activtek Environmental, Ecoquest, and Ecobox marks.

15.     From its inception, EcoQuest International used numerous original trademarks in connection with the sale and distribution of its air filtration products.  These trademarks helped consumers identify EcoQuest products and distinguish them from products sold by EcoQuest International's competitors.  From 2005 through 2008, EcoQuest International registered several of the marks with the U.S. Patent and Trademark Office ("USPTO"), including FRESH AIR BY ECOQUEST (Reg. Nos. 3,023,417 and 2,947,914); ECOQUEST (Reg. No. 3,062,066); ECOBOX (Reg. No. 3,441,969); ACTIVTEK ENVIRONMENTAL (Reg. No. 3,686,657), RCI RADIANT CATALYTIC IONIZER (Reg No. 2,966,620); and ACTIVEPURE (Reg. No. 3,427,682) (collectively, the "EcoQuest Trademarks").

16.     Several of the products bearing the EcoQuest Trademarks also received designation as "Certified Space Technology" by the United States Space Foundation ("USSF")—a non-profit that designates and distinguishes products derived from space-related technology.  CERTIFIED SPACE TECHNOLOGY is a certification mark registered by the USSF (Reg. No. 3,230,615). Through certification by and licenses with USSF, the Certified Space Technology designation permitted EcoQuest International to use the certification mark in conjunction with its ActivePure products, which incorporate the radiant catalytic ionizer technology developed by EcoQuest International.  For instance, products such as the FreshAir Cube feature the Certified Space Technology mark, and the certification mark has been used continually in their advertisement.

17.     As EcoQuest International grew, it established significant goodwill in the marketplace for its products and brand.  During this time, consumers associated the EcoQuest Trademarks with this goodwill and with EcoQuest International's products and technology.

4

18.     Due to the quality and exclusive distribution of EcoQuest International's products, and because EcoQuest International was recognized as the source of high-quality products, the EcoQuest Trademarks maintained substantial value.

### Plaintiffs' Acquisition of Assets of Ecoquest International

19.     In 2009, DBG Group acquired the majority of EcoQuest International's assets, including the rights to the EcoQuest Trademarks.   Plaintiffs continued using the EcoQuest Trademarks.   Plaintiffs also continue to use the CERTIFIED SPACE TECHNOLOGY mark from the USSF in conjunction with its ActivePure products.   In addition, Plaintiffs registered additional trademarks related to existing brands and marks.   These include ACTIVTEK (Reg. No. 4,715,402, registered April 7, 2015) and ACTIVTEK ENVIRONMENTAL (Reg. No. 5,353,583, registered December 12, 2017) (collectively, these marks and EcoQuest Trademarks will be referred to as the "Plaintiffs Trademarks").

20.     Since the acquisition of EcoQuest International, Plaintiffs have devoted a significant amount of time, energy, and resources to protecting the value of their brands, products, and reputation.

21.     During this period, Plaintiffs also continued to use the EcoQuest Trademarks in commerce in connection with their products and services.   Plaintiffs continued to devote a significant amount of time, energy, and resources to protecting the value of the EcoQuest Trademarks.

22.     Notably, Plaintiffs continued to use the ECOQUEST mark and the FRESH AIR BY ECOQUEST mark in commerce to identify products and services.   In 2015, DBG Group renewed the FRESH AIR BY ECOQUEST mark with the USPTO.   In 2016, DBG Group renewed the ECOQUEST mark with the USPTO.

23.     The registration for each of the Plaintiffs Trademarks is valid, subsisting, and in full force and effect.

24.     Plaintiffs actively use and market the Plaintiffs Trademarks in commerce.

25.     Due to the quality and exclusive distribution of Plaintiffs' products, and because Plaintiffs' are recognized as the source of high-quality products, the Plaintiffs Trademarks have substantial value.

**Defendants Are Creating a Likelihood of Consumer Confusion
By Using the Plaintiffs Trademarks on Their Website**

26.     In or around 2015, Defendants started using EcoQuest as their tradename and began using the Plaintiffs Trademarks in connection with the advertisement and sale of products that are very similar to products being sold and advertised by Plaintiffs.   With the EcoQuest brand (including the ACTIVTEK mark) now being marketed and used by Plaintiffs, Defendants perpetrated a campaign to confuse consumers into thinking that Defendants—rather than Plaintiffs—were the successors of the EcoQuest International entity and the continuation of the EcoQuest brand.

27.     On information and belief, Defendants' efforts were led by Vysotsky.   Vysotsky initially registered to be an authorized Independent Distributor of Vollara in February 2015.   His status was suspended in November 2015, however, and that suspension was never lifted.   Vysotsky is not authorized to sell Vollara's products or to use the DBG Trademarks.

28.     Upon information and belief, Vysotsky formed Ecotech to perpetrate his campaign to infringe Plaintiffs Trademarks and trade on the goodwill of the Plaintiffs' brands and marks. Vysotsky is currently listed as the registered agent for Ecotech.

29.     On information and belief, Defendants began to misappropriate the ECOQUEST mark by registering—in 2015 and 2016—the domain names <ecoquest.net>, <ecoquest-

usa.com>, <ecoquestusa.com>, and <ecoquestusa.net> (collectively, the "Ecoquest.net Domains"). Defendants set up their website, accessible through all the Ecoquest.net Domains, in a manner that falsely suggested that Defendants were the manufacturers or authorized sellers of EcoQuest products or are otherwise affiliated with Plaintiffs. Defendants advertised and sold products similar to those sold by Vollara on their website, every page of which contained a banner that advertised and suggested an association with Vollara:



30.     In addition to offering repair services and other parts and accessories at the website located at the Ecoquest.net Domains, Defendants purported to sell new air purifiers, including those sharing similar names and similar designs as Plaintiffs' products. This includes items such as the "Fresh Air Cube" and "Classic XL-15" (see the screenshots below, on the left), which are substantially similar to Vollara's FreshAir Cube and ClassicAir (see the screenshots below, on the right).



31.     On March 10, 2018, an administrative panel of the World Intellectual Property Organization concluded that, under the Uniform Domain Name Dispute Resolution Policy ("UDRP"), Vysotsky's use of the Ecoquest.net Domains infringed Plaintiffs' trademarks and that Vysotsky had registered and used the Ecoquest.net Domains in bad faith ("UDRP Decision").  The UDRP Decision ordered that the Ecoquest.net Domains must be transferred from Vysotsky to DBG Group, and in April 2018 the registrar GoDaddy.com, LLC transferred the Domains to DBG Group.

**Defendants Move Their Infringing Campaign to EcoQuest.Co**

32.     Following the transfer of the Ecoquest.net Domains, Plaintiffs believed that the Defendants campaign to infringe the Plaintiffs Trademarks and trade on the goodwill of the Plaintiffs' brands and marks was over.  In the following weeks, however, Plaintiffs discovered that Defendants owned and had begun using *another* domain—<ecoquest.co>—that directs to a website operated by Defendants.  The Defendants' website that is hosted at <ecoquest.co> is virtually identical in appearance to the website that was hosted at the Ecoquest.net Domains before the Ecoquest.net Domains were transferred to DBG Group.

33.     Beginning in approximately April 2018, the Defendants' website—now located at <ecoquest.co>—resumed using the Plaintiffs Trademarks to confuse and mislead consumers into believing that Defendants are the successors of EcoQuest International or the continuation of the EcoQuest brand when, in fact, the EcoQuest brand is now part of the Plaintiffs Trademarks.  The ECOQUEST mark appears prominently on the landing page of Defendants' website as well as virtually every other page of the website.  The Defendants' website also contains the same banner

as the website that was hosted at the Ecoquest.net Domains, which purports to associate Defendants with Vollara.

34.    Defendants have spread their misappropriation campaign beyond their website and the <ecoquest.co> domain.  As recently as October 2018, a Google search for "ecoquest" featured a Google keyword ad for ecoquest.co that billed it as the "Official Website" and "In the Industry for Over 25 Years. Space Technology Verified by NASA."

**Official Website. New Models. | Air Purifiers, Parts, Repairs.**
[Ad] www.ecoquest.co/ ▼
The Fresh Air 3.1 is the Best Air Purifier of the Year!. Now it works with any Voltage. In the Industry For Over 25 Years. Space Technology Verified by NASA. Get Gift Certificates. Check Order Status. Highlights: Professional Repair Shop, Customer Service Representatives Available, Low Prices.
Parts&Accessories · New Air Purifiers · Refurbished Air Purifiers · Repair Service · Hepa Filters

35.    Defendants have not been "in the Industry For Over 25 Years."  Rather, this advertisement intends to confuse consumers into thinking that Defendants are, or are the successor to, the original EcoQuest International and EcoQuest brand.

36.    Elsewhere on their website, Defendants promote or promoted what they have dubbed the "EcoQua" brand in connection with the Plaintiffs Trademarks and various products. Defendants used or are using the EcoQua mark in numerous listings of products offered for sale by Defendants on the Website in conjunction with the Plaintiffs Trademarks.  Defendants are doing so to capitalize on the goodwill of the confusingly similar ECOQUEST mark.

37.    Defendants attempted to register the EcoQua mark but abandoned the registration in January 2018.

**Defendants Are Selling Products to Consumers Through Their Website and Their Sales and Product Listings Infringe Plaintiffs' Rights in the Plaintiffs Trademarks**

38.    Defendants have sold—and are currently selling—products bearing Plaintiffs Trademarks on their website and, on information and belief, through other channels.

39.     Defendants are selling these products without authorization and in violation of Plaintiffs' intellectual property rights under federal and state law.  Plaintiffs are not affiliated with Defendants.

40.     Through their unauthorized use of Plaintiffs Trademarks, Defendants have misled—and continue to mislead—consumers into believing that they are purchasing Plaintiffs' products.

41.     For example, Defendants are using the ACTIVEPURE mark in connection with products offered for sale on their website.  A product listed on Defendants' website called the "RCI Cell 9" for DuctwoRx InDuct 2000, Scrubber Plus" contains the following product description:

Product Description

**RCI ActivePure Replacement Cell with UV Light Bulb for DuctwoRx, InDuct 2000, and Air Scrubber Plus units.**

RCI ActivePure Cell is an essential part of InDuct air purification system to eliminate smoke, odors, and reduce airborne contaminants.

The RCI Cell should be replaced when UV Light Bulb is burned, or every two years whichever comes first.

*See*   http://www.ecoquest.co/products/RCI-CELL-9%22-for-DuctwoRx%2C-InDuct-2000%2C-Scrubber-Plus.html (last visited October 12, 2018).

42.     As another example, Defendants are advertising and selling a product called "RCI Cell FreshAir Box/Cube" that has "RCI ActivePure Cell" technology:

RCI Cell FreshAir Box/Cube

Sale Price:  **$57.90**
Regular Price: $99.90

30 day money back policy

Shipping:  Calculated at checko
Qty: 1

Add to cart

**Product Description**

RCI ActivePure Cell is an essential part of FreshAir Box/Cube, GT 1500 air purifier to eliminate smoke, odors, and reduce airborne contaminants.

The RCI Cell should be replaced when UV Light Bulb is burned, or every two years which ever comes first.

*See* http://www.ecoquest.co/products/RCI-Cell-FreshAir-Box%7B47%7DCube.html (last visited October 12, 2018). This listing features a photo of a product that appears identical to the "FreshAir Cube" product sold by Vollara, which contains genuine ActivePure technology:



*See* https://www.vollara.com/globalassets/downloads/pdf/FAC_SS_SellSheet.pdf (last visited October 12, 2018).

43.    As an additional example, Defendants are advertising and selling a product called "Induct 2000" as having "activTek INDUCT 2000 with revolutionary EcoQua Technology…":

**Product Description**

The activTek INDUCT 2000 with revolutionary EcoQua technology can be a major improvement for your typical HVAC system, since it capable not only of eliminating odors and visible smoke, but also removing harmful contamination on surfaces. The INDUCT 2000 has two installation options: for 100 or 277 volts. This unit can be mounted in a ductwork or plenum for significant increase of air quality. Based on the principle «install it and forget», The INDUCT 2000 does not need specific treatment or scheduled cleaning. This unit has a helpful indicator using a UV bulb. It is recommended for working spaces ~2000 square feet.

*See* http://www.ecoquest.co/products/Induct-2000.html (last visited October 12, 2018).

44.   In connection with Defendants' use of the ECOQUEST, ACTIVTEK, and ACTIVEPURE marks, Defendants seek to mislead the public into believing that their products are or are related to the product line formerly sold by EcoQuest International and now sold by Vollara and DBG Group. Defendants' representations are intended to confuse consumers as to Defendants' association with Plaintiffs and Plaintiffs' predecessor to the EcoQuest Trademarks, EcoQuest International.

45.   Upon information and belief, through their website, Defendants are accepting and fulfilling orders from Texas residents for products bearing the Plaintiffs Trademarks and are shipping products bearing the Plaintiffs Trademarks to customers located in Texas.

### Defendants' False Advertising Trough Misappropriation of the "Certified Space Technology" Certification Mark

46.   Defendants' website, which is accessible throughout the United States and beyond, displays the "Certified Space Technology" mark in connection with various products advertised and sold by Defendants.

47.   For example, Defendants are representing that a product they advertise as the "Fresh Air 3.1" contains "Certified Space Technology":

Product Description

*Introducing a new Fresh Air model 3.1*

*Model 2019*

*This is the best model of the year! We changed the motherboard and improved all system!*

*Now it works with any voltage!*

 The fresh Air purifier is the safest, most sought-after alpine fresh living air purifier in the world. Fresh Air technology has been given the exclusive "Certified In Space" distinction by the NASA associated Space Foundation. By duplicating the same processes nature uses to clean the air outside, Fresh Air purifier keeps indoor air fresh and clean day and night. Collectively known as RCI Cell, these methods work together synergistically to eliminate smoke and odors and reduce airborne contaminants. For any indoor air concerns, we suggest you try Fresh Air purifier and see for yourself how useful it is.

V.S.L.A.



12

*See* http://www.ecoquest.co/products/RCI-Cell-FreshAir-Box%7B47%7DCube.html (last visited October 12, 2018).

48.     On information and belief, neither this product nor any product manufactured or sold by Defendants has been designated by the USSF as Certified Space Technology.

49.     On information and belief, Defendants are not authorized to use the USSF's Certified Space Technology mark in any manner.

50.     Many of the products listed on Defendants' website that display the Certified Space Technology mark are products that are similar to and compete with Plaintiffs' products.

51.     To obtain certification, USSF requires companies, among other things, to submit an application detailing the products' relationship to the space industry and pay an application fee.

52.     Being able to use the Certified Space Technology mark in connection with a product or company provides a competitive advantage, as consumers have an interest in using products connected to space technology.

53.     Defendants obtained the benefit of advertising their products with the Certified Space Technology mark without obtaining the proper certifications and licenses.

54.     As a result of Defendants advertising and misuse of the Certified Space Technology mark, Plaintiffs suffered damages, including, without limitation, lost sales of their products.

**Defendants' Illegal Sales of ActivTek Products**

55.     Upon information and belief, Defendants acquired and continue to acquire products manufactured and sold by DBG Group under the activTek brand and/or counterfeit products bearing the ACTIVTEK mark for the purpose of reselling the products on the Internet under the EcoQua brand or otherwise holding Plaintiffs' products out as Defendants' products.

56.     Through their unauthorized use of the ACTIVTEK mark, Defendants have misled—and continue to mislead—consumers into believing that Defendants are (1) the successors to EcoQuest International company and brand, (2) the source of ACTIVTEK products and/or (3) are authorized to sell Plaintiffs' products.

57.     Defendants are not authorized by Plaintiffs to sell products bearing the ACTIVTEK marks.

58.     Defendants' website lists a line of "activTek INDUCT" products purporting to contain technology developed by and belonging to Defendants as "EcoQua."

59.     For instance, in a product listing for a product called the "activTek Induct 750," Defendants assert that the product is "[a]rmed with th[e] original EcoQua technology."



See http://www.ecoquest.co/products/InDuct-750.html (last visited October 12, 2018).

60.     Listings for other products on Defendants' website, such as the "activTek INDUCT 2000: and the "activTek INDUCT 500," represent that the products feature "revolutionary" or "innovative" EcoQua technology.

14

61.     These "activTek INDUCT" products, along with the "Induct500," "Induct5000," and "Induct1000," use the ACTIVTEK mark to mislead consumers into believing that Defendants are authorized to manufacture and sell genuine products of the line of air filtration products previously offered by EcoQuest International, which was acquired and continuously marketed by Plaintiffs.  Defendants are not affiliated in any way with Plaintiffs, and Defendants did not develop technology that consumers associate with ACTIVTEK products.

## Plaintiffs Have Suffered Substantial Harm

62.     As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, irreparable harm to their goodwill, business, and to the Plaintiffs Trademarks.

63.     Defendants' conduct was knowing, intentional, willful, malicious, wanton, and contrary to law.

64.     Plaintiffs are entitled to injunctive relief because Defendants will otherwise continue to unlawfully sell Plaintiffs' products under Defendants' brands and unlawfully sell Defendants' products under Plaintiffs' brands.  Defendants' ongoing illegal conduct has caused, and will continue to cause, irreparable harm to Plaintiffs' goodwill, and has caused, and will continue to cause, Plaintiffs to lose business.

## FIRST CAUSE OF ACTION
### Trademark Infringement
### 15 U.S.C. § 1114

65.     Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

66.     Plaintiffs are the owners of the Plaintiffs Trademarks.

67.     Plaintiffs have registered the Plaintiffs Trademarks with the USPTO.

68.     The Plaintiffs Trademarks are valid and subsisting trademarks in full force and effect.

69.     Defendants willfully and knowingly used, and continue to use, the Plaintiffs Trademarks in commerce on their website and elsewhere on the Internet for the purpose of selling Defendants' products without the consent of Plaintiffs.

70.     Defendants' use of the Plaintiffs Trademarks in connection with their unauthorized sale of products is likely to cause consumer confusion, cause mistake, or deceive consumers because it suggests that the products offered for sale by Defendants are the same as Plaintiffs' products legitimately bearing the Plaintiffs Trademarks, or that they originate from, are sponsored by, authorized by, approved by, or otherwise connected with Plaintiffs.

71.     The products sold by Defendants, in fact, are not Plaintiffs' genuine and authentic products and they are not sponsored by, approved by, or otherwise connected with Plaintiffs.

72.     Defendants' unauthorized use of the Plaintiffs Trademarks has materially damaged the value of the Plaintiffs Trademarks, caused significant damage to Plaintiffs' business relations, and infringed on the Plaintiffs Trademarks.

73.     As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage, including to their business, goodwill, reputation, and profits in an amount to be proven at trial.

74.     Plaintiffs are entitled to recover damages caused by Defendants' infringement of the Plaintiffs Trademarks and to disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

75.     Pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to injunctive relief enjoining Defendants' infringing conduct.

76.     Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to enhanced damages and an award of attorneys' fees.

## SECOND CAUSE OF ACTION
### False Advertising Regarding the Plaintiffs Trademarks
### 15 U.S.C. § 1125(a)(1)(b)

77.     Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

78.     Plaintiffs are the owners and/or licensees of the Plaintiffs Trademarks, which are inherently distinctive marks and have otherwise become distinctive through acquiring secondary meaning by the consuming public.  Plaintiffs are widely recognized as the designated source of goods bearing the Plaintiffs Trademarks.

79.     Plaintiffs have registered the Plaintiffs Trademarks with the USPTO, and the Plaintiffs Trademarks are valid and subsisting trademarks in full force and effect.

80.     Defendants' unauthorized and deceptive use of the Plaintiffs Trademarks on their website and elsewhere on the Internet is material and likely to influence consumers to purchase the products, as consumers are likely to believe that products advertised by Defendants using the Plaintiffs Trademarks are genuine and authentic Plaintiffs' products and originate from, or are sponsored by, authorized by, approved by, or otherwise connected with Plaintiffs.

81.     In addition, Defendants' unauthorized and deceptive use of the Plaintiffs Trademarks on their website and elsewhere on the Internet is material and likely to influence consumers to purchase Defendants' products, as consumers are likely to falsely believe that products bearing the Plaintiffs Trademarks have been developed and manufactured by Defendants.

82.     Defendants are not affiliated in any way with Plaintiffs, and Defendants have not developed or manufactured any products containing Plaintiffs' proprietary ActivePure technology.

83.     Defendants' unauthorized sale of products bearing the Plaintiffs Trademarks and unauthorized use of the Plaintiffs Trademarks in advertising have materially damaged the value of the Plaintiffs Trademarks and caused significant damage to Plaintiffs' business relations.

84.     As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage, including to its business, goodwill, reputation, and profits in an amount to be proven at trial.

85.     Pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to injunctive relief enjoining Defendants' infringing conduct.

86.     Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to enhanced damages and an award of attorneys' fees.

### THIRD CAUSE OF ACTION
**False Advertising Regarding Certified Space Technology Mark**
**15  U.S.C. § 1125(a)(1)(b)**

87.     Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

88.     USSF is the owner of the CERTIFIED SPACE TECHNOLOGY (Reg. No. 3,322,368) certification mark.

89.     Plaintiffs are authorized by USSF to use the Certified Space Technology mark on various products.

90.     On information and belief, Defendants are not authorized by the USSF to use the Certified Space Technology mark on any products or in any manner.

91.     In their advertisements on their website and elsewhere on the Internet, Defendants have willfully and knowingly used the CERTIFIED SPACE TECHNOLOGY mark in interstate commerce in connection with the sale and advertising of Defendants' products.

92.     Defendants' unauthorized and misleading use of the CERTIFIED SPACE TECHNOLOGY mark on the Website and elsewhere on the Internet is material and likely to influence consumers to purchase the products, as consumers are likely to believe that products

advertised by Defendants meet the standards for CERTIFIED SPACE TECHNOLOGY maintained by USSF.

93.     Defendants' use of the CERTIFIED SPACE TECHNOLOGY mark provides a competitive advantage for Defendants because consumers who false believe that Defendants' products are meet the certification requirements of USSF are more likely to purchase Defendants' products.

94.     Plaintiffs have been damaged and have lost sales to Defendants as a result of Defendants' false advertising using the CERTIFIED SPACE TECHNOLOGY mark.

95.     Pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to injunctive relief enjoining Defendants' infringing conduct.

96.     Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to enhanced damages and an award of attorneys' fees.

## FOURTH CAUSE OF ACTION
### Unfair Competition (Passing Off)
### 15 U.S.C. § 1125(a)

97.     Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

98.     Plaintiffs are the owners and/or licensees of the Plaintiffs Trademarks, which are inherently distinctive marks and have otherwise become distinctive through acquiring secondary meaning by the consuming public.  Plaintiffs are widely recognized as the designated source of goods bearing the Plaintiffs Trademarks.

99.     Plaintiffs have registered the Plaintiffs Trademarks with the USPTO, and the Plaintiffs Trademarks are valid and subsisting trademarks in full force and effect.

100.    Defendants have willfully and knowingly used the Plaintiffs Trademarks in commerce through the sale and advertising of products without the consent of Plaintiffs.

101.    Defendants' use of the Plaintiffs Trademarks in connection with their unauthorized sale and advertising of products is likely to cause consumer confusion, cause mistake, or deceive an appreciable number of ordinarily prudent purchasers as to the affiliation, connection, association, sponsorship, or approval of Defendants' products because it misrepresents that the products and technology offered for sale by Defendants originate from, or are sponsored by, authorized by, approved by, or otherwise connected with Plaintiffs.

102.    Defendants' unauthorized sale of products bearing the Plaintiffs Trademarks (and/or sale of counterfeit products) and unauthorized use of the Plaintiffs Trademarks in advertising have materially damaged the value of the Plaintiffs Trademarks and caused damage to Plaintiffs' business relations.

103.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage, including to their business, goodwill, reputation, and profits in an amount to be proven at trial.

104.    Pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to injunctive relief enjoining Defendants' infringing conduct.

105.    Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to enhanced damages and an award of attorneys' fees.

**FIFTH CAUSE OF ACTION**
**Unfair Competition (Reverse Passing Off)**
**15 U.S.C. § 1125(a)**

106.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

107.    Plaintiffs are the owners and/or licensees of the Plaintiffs Trademarks (including the ACTIVTEK and ACTIVEPURE marks), which are inherently distinctive marks and have otherwise become distinctive through acquiring secondary meaning by the consuming public.

Plaintiffs are widely recognized as the designated source of goods bearing the Plaintiffs Trademarks.

108.    Plaintiffs have registered the Plaintiffs Trademarks with the USPTO, and the Plaintiffs Trademarks are valid and subsisting trademarks in full force and effect.

109.    Defendants have willfully and knowingly used the Plaintiffs Trademarks in commerce through the sale and advertising of products without the consent of Plaintiffs.

110.    Defendants are offering products for sale under the ACTIVTEK mark that, on information and belief, originate from Plaintiffs and contain technology proprietary to Plaintiffs. Defendants' offers and advertisements to sell these goods falsely designate the goods as originating from Defendants, including, without limitation, as part of Defendants' EcoQua brand.

111.    Defendants' unauthorized and deceptive use of the Plaintiffs Trademarks in connection with their unauthorized sale and advertising of products is likely to cause consumer confusion, cause mistake, or deceive an appreciable number of ordinarily prudent purchasers as to the affiliation, connection, association, sponsorship, or approval of Plaintiffs because it falsely suggests that products sold by Defendants that were manufactured and developed by Plaintiffs were developed and manufactured by Defendants.

112.    Defendants are not affiliated in any way with Plaintiffs, and Defendants have not developed or manufactured activTek products or any other products containing Plaintiffs' proprietary ActivePure technology.

113.    Defendants' unauthorized sale of products bearing the Plaintiffs Trademarks, and unauthorized use of the Plaintiffs Trademarks in advertising, have materially damaged the value of the Plaintiffs Trademarks and caused significant damage to Plaintiffs' business relations.

114.   As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage, including to their business, goodwill, reputation, and profits in an amount to be proven at trial.

115.   Pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to injunctive relief enjoining Defendants' infringing conduct.

116.   Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to enhanced damages and an award of attorneys' fees.

## SIXTH CAUSE OF ACTION
### Texas Common Law Trademark Infringement

117.   Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

118.   This claim arises under the laws of the State of Texas.

119.   Plaintiffs are the owners and licensees of the Plaintiffs Trademarks, which are distinctive inherently distinctive marks and have otherwise become distinctive through acquiring secondary meaning by the consuming public.  As such, the Plaintiffs Trademarks are the means by which Plaintiffs' products and services are distinguished from others in the marketplace throughout the United States, including Texas.

120.   Plaintiffs have expended substantial time, effort, money, and resources advertising and promoting their products and services under the Plaintiffs Trademarks. Products bearing the Plaintiffs Trademarks are sold by Plaintiffs throughout the United States, including Texas. Plaintiffs are widely recognized as the designated source of goods bearing the Plaintiffs Trademarks.

121.    The Plaintiffs Trademarks are valid and subsisting trademarks in full force and effect.

122.     Defendants willfully and knowingly used, and continue to use, the Plaintiffs Trademarks in commerce on their website and elsewhere on the Internet for the purpose of selling Defendants' products without the consent of Plaintiffs.

123.     Defendants' use of the Plaintiffs Trademarks in connection with their unauthorized sale of products is likely to cause consumer confusion, cause mistake, or deceive consumers because it suggests that the products offered for sale by Defendants are the same as Plaintiffs' products legitimately bearing the Plaintiffs Trademarks or that they originate from, are sponsored by, authorized by, approved by or otherwise connected with Plaintiffs.

124.     The products sold by Defendants, in fact, are not Plaintiffs' genuine and authentic products and they are not sponsored by, approved by, or otherwise connected with Plaintiffs.

125.     Defendants' unauthorized sale of products bearing the Plaintiffs Trademarks and unauthorized use of the Plaintiffs Trademarks in advertising have materially damaged the value of the Plaintiffs Trademarks and caused significant damage to Plaintiffs' business relations.

126.     As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage, including to their business, goodwill, reputation, and profits in an amount to be proven at trial.

127.     Plaintiffs are entitled to recover damages caused by Defendants' infringement of the Plaintiffs Trademarks and to disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

128.     In harming Plaintiffs, Defendants have acted with willful misconduct and actual malice.  Accordingly, Plaintiffs are entitled to an award of punitive damages.

## SEVENTH CAUSE OF ACTION
### Texas Common Law Unfair Competition (Passing Off)

129.   Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

130.   This claim arises under the laws of the State of Texas.

131.   Plaintiffs are the owners and licensees of the Plaintiffs Trademarks, which are distinctive inherently distinctive marks and have otherwise become distinctive through acquiring secondary meaning by the consuming public. As such, the Plaintiffs Trademarks are the means by which Plaintiffs' products and services are distinguished from others in the marketplace throughout the United States, including Texas.

132.   Plaintiffs have expended substantial time, effort, money, and resources advertising and promoting their products and services under the Plaintiffs Trademarks.  Products bearing the Plaintiffs Trademarks are sold by Plaintiffs throughout the United States, including Texas. Plaintiffs are widely recognized in Texas as the designated source of goods bearing the Plaintiffs Trademarks.

133.   Defendants have willfully and knowingly used the Plaintiffs Trademarks in commerce through the sale and advertising of products without the consent of Plaintiffs throughout the United States, including Texas.

134.   Defendants' use of the Plaintiffs Trademarks in connection with their unauthorized sale and advertising of products is likely to cause consumer confusion, cause mistake, or deceive an appreciable number of ordinarily prudent purchasers as to the affiliation, connection, association, sponsorship, or approval of Defendants' products because it misrepresents that the products offered for sale by Defendants originate from, or are sponsored by, authorized by, approved by or otherwise connected with Plaintiffs.

135.     Defendants' unauthorized sale of products bearing the Plaintiffs Trademarks and unauthorized use of the Plaintiffs Trademarks in advertising have materially damaged the value of the Plaintiffs Trademarks and caused significant damage to Plaintiffs' business relations.

136.     As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage, including to their business, goodwill, reputation, and profits in an amount to be proven at trial.

137.     In harming Plaintiffs, Defendants have acted with willful misconduct and actual malice.  Accordingly, Plaintiffs are entitled to an award of punitive damages.

## EIGHTH CAUSE OF ACTION
### Texas Common Law Unfair Competition (Misappropriation)

138.     Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

139.     This claim arises under the laws of the State of Texas.

140.     Plaintiffs are the owners and licensees of the Plaintiffs Trademarks.

141.     Plaintiffs have registered the Plaintiffs Trademarks with the USPTO.

142.     Plaintiffs are the owners and licensees of the Plaintiffs Trademarks, which are inherently distinctive marks and have otherwise become distinctive through acquiring secondary meaning by the consuming public.  As such, the Plaintiffs Trademarks are the means by which Plaintiffs' products and services are distinguished from others in the marketplace throughout the United States, including Texas.

143.      Plaintiffs have expended substantial time, effort, money, and resources advertising and promoting their products and services under the Plaintiffs Trademarks.  Products bearing the Plaintiffs Trademarks are sold by Plaintiffs throughout the United States, including Texas.

Plaintiffs are widely recognized in Texas as the designated source of goods bearing the Plaintiffs Trademarks.

144.     Defendants willfully and knowingly used the Plaintiffs Trademarks in commerce through the sale and advertising of products in competition with Plaintiffs without the consent of Plaintiffs throughout the United States, including Texas.

145.     Defendants' use of the Plaintiffs Trademarks in connection with their unauthorized sale and advertising of products is likely to cause consumer confusion, cause mistake, or deceive an appreciable number of ordinarily prudent purchasers as to the affiliation, connection, association, sponsorship, or approval of Plaintiffs' products because it misrepresents that the products offered for sale by Defendants originate from, or are sponsored by, authorized by, approved by or otherwise connected with Plaintiffs and their predecessor EcoQuest International.

146.     Likewise, Defendants use of the Plaintiffs Trademarks misrepresents that products sold by Defendants that actually do originate from Plaintiffs originate from Defendants or are otherwise connected with products and technology developed and manufactured by Defendants.

147.     In doing so, Defendants free ride off of Plaintiffs' time, labor, skill, and money.

148.     Defendants' unauthorized sale of products bearing the Plaintiffs Trademarks and unauthorized use of the Plaintiffs Trademarks in advertising have materially damaged the value of the Plaintiffs Trademarks and caused significant damage to Plaintiffs' business relations.

149.     As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage, including to their business, goodwill, reputation, and profits in an amount to be proven at trial.

150.     In harming Plaintiffs, Defendants have acted with willful misconduct and actual malice.  Accordingly, Plaintiffs are entitled to an award of punitive damages.

## CONDITIONS PRECEDENT

151.    All conditions precedent to Plaintiffs' claims for relief, if any, have occurred or have been performed.

## REQUEST FOR ATTORNEYS' FEES

152.    Plaintiffs are entitled to recover its attorneys' fees and costs for this action, pursuant to the federal and state law identified herein, and Plaintiffs hereby seek such recovery from Defendants of all their reasonable and necessary attorneys' fees and costs for prosecuting this action and obtaining the relief requested herein.

## JURY DEMAND

153.    Plaintiffs demand a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

A.      Judgment in favor of Plaintiffs and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, attorneys' fees, restitution, including disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B.      That a permanent injunction be issued enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

i)      Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all Plaintiffs' products,

ii)     Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all Defendants' products that contain or purport to contain Plaintiffs' proprietary technology,

iii) Prohibiting the Enjoined Parties from using any of the Plaintiffs Trademarks in any manner, including advertising on the Internet,

iv) Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Plaintiffs' products as well as any products bearing any of the Plaintiffs Trademarks,

v) Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Plaintiffs Trademarks, including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks,

vi) Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of Plaintiffs' products and any of the Plaintiffs Trademarks,

vii) Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo!, and Bing), to remove from the Internet any of the Plaintiffs Trademarks which associate Plaintiffs' products or the Plaintiffs Trademarks with the Enjoined Parties or the Enjoined Parties' website(s), and

viii) Requiring the Enjoined Parties to take all action to remove the Plaintiffs Trademarks from the Internet, including from the website www.ecoquest.co;

C. An award of attorneys' fees, costs, and expenses; and

D. Such other and further relief as the Court deems just, equitable and proper.

Dated: October 18, 2018                    Respectfully submitted,


                                            By: /s/ Martin E. Rose
                                            **Martin E. Rose**
                                            State Bar No. 17253100
                                            mrose@rosewalker.com
                                            **Ben A. West**
                                            State Bar No. 24084074
                                            bwest@rosewalker.com
                                            **ROSE•WALKER, L.L.P.**

3500 Maple Ave., Suite 1200
Dallas, Texas 75219
Telephone:  (214) 752-8600
Facsimile:   (214) 752-8700

**Adam C. Sherman**
acsherman@vorys.com
**VORYS, SATER, SEYMOUR AND PEASE LLP**
301 East Fourth Street
Suite 3500, Great American Tower
Cincinnati, Ohio 45202
Telephone: 513.723.4680
Facsimile: 513.852.8468

**ATTORNEYS FOR PLAINTIFFS**